UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

February 8, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Laura G. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1380-BAH

Dear Counsel:

On June 6, 2022, Plaintiff Laura G. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 8, the parties' cross-motions for summary judgment, ECFs 12 and 14, and Plaintiff's reply, ECF 15.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Plaintiff's motion insofar as it seeks remand, DENY Defendant's motion motions, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on September 12, 2019, alleging a disability onset of May 7, 2019. Tr. 19; *see also* Tr. 178–87. Plaintiff's claim was denied initially and on reconsideration. Tr. 98–102, 109–11. On September 23, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 39–67. Following the hearing, on November 3, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 16–38. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable

---

[1] Standing Order 2022-04 amended the Court's procedures regarding Social Security appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Because Plaintiff's motion was filed before the effective date of the Standing Order and because Defendant's motion was docketed as a motion for summary judgment, the Court will refer to the filings as motions for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "not engaged in substantial gainful activity since May 7, 2019, the alleged onset date." Tr. 21. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "cervical radiculopathy, post-concussive syndrome status-post traumatic brain injury (TBI)/neurocognitive disorder, headache disorder, benign paroxysmal positional vertigo (BPPV), obesity, and an adjustment disorder." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "hernia, irritable bowel syndrome, abdominal pain, knee pain, [and] hearing loss." *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22. The ALJ did, however, determine that Plaintiff had moderate limitations in three of the four broad areas of mental functioning areas under the "paragraph B" criteria, including (1) understanding, remembering, and applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace. Tr. 23–24. In adapting or managing oneself, the ALJ found that Plaintiff had only a mild limitation. Tr. 24. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand/walk four hours in an eight-hour workday. The claimant can frequently stoop, crouch, and climb ramps and stairs. The claimant can occasionally kneel and crawl but cannot climb ladders, ropes, or scaffolds. The claimant can frequently reach overhead. The claimant can have occasional exposure to vibrations. The claimant cannot have exposure to hazardous conditions, including unprotected heights and moving machinery. The claimant is able to perform simple, routine tasks and can perform "low stress" work, defined as occasional independent decision-making and occasional workplace changes. The claimant can have occasional interaction with the general public.

Tr. 25. After considering testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff is not able to perform past relevant work as a cook (DOT[3] Code 315.361-010), cashier (DOT Code 211.462-010), or waitress (DOT Code 311.477-030) but could perform other jobs that existed in significant numbers in the national economy, including routing clerk (DOT Code 222.687-022), office helper (DOT Code 239.567-010), or photocopy machine operator (DOT Code 207.685-014). Tr. 31–32. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 33.

### III. <u>LEGAL STANDARD</u>

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.""). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. <u>ANALYSIS</u>

Plaintiff raises one main argument on appeal, specifically that the ALJ failed to comply with *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). ECF 12-1, at 9–21. Specifically, Plaintiff argues that the ALJ erred by finding Plaintiff had a moderate limitation in concentrating,

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Laura G. v. Kijakazi*
Civil No. 22-1380-BAH
February 8, 2023
Page 4

persisting, or maintaining pace ("CPP"), but failed to adequately account for this limitation in the RFC by either including an accommodating limitation or by explaining why no such limitation was necessary. *Id.* at 11. Defendant counters that the ALJ's opinion comports with *Mascio* because the ALJ sufficiently explained how limiting the Plaintiff to "simple, routine tasks," "'low stress' work, defined as occasional independent decision-making and occasional workplace changes," and "occasional interaction with the general public" accounts for Plaintiff's mental limitations and because the ALJ's conclusions are supported by substantial evidence. ECF 14-1, at 5–16.

In *Mascio*, the Fourth Circuit ordered remand to the SSA "because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace." *McDonald v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3041, 2017 WL 3037554, at *3 (D. Md. July 18, 2017) (citing *Mascio*, 780 F.3d at 637–38).[4] *Mascio* unambiguously states that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quoting *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

The Fourth Circuit clarified *Mascio* in a subsequent decision, rejecting "a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Berryhill*, 952 F.3d 113, 121 (4th Cir. 2020). "On the contrary," the Court affirmed that remand is not required when an "'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638). Though the ALJ in *Shinaberry* did not include a limitation in the RFC that corresponded with the claimant's moderate CPP limitation, the Fourth Circuit found remand improper because the ALJ sufficiently explained that the claimant's moderate CPP limitation, which stemmed from a "lifelong, borderline intellectual disability," did not affect her ability to work as she had maintained a 20-year work history despite suffering the limitation. *Id.* at 122. Thus, post-*Mascio* and its progeny, "an ALJ may account for a moderate CPP limitation with an RFC determination that a claimant can complete simple, routine tasks provided the conclusion is supported by substantial evidence." *Terri S. v. Kijakazi*, No. DLB-19-3607, 2021 WL 5395960, at *2 (D. Md. Nov. 18, 2021) (citing *Sizemore v. Berryhill*, 878F.3d 72, 80–81 (4th Cir. 2017); *Shinaberry*, 952 F.3d at 121–22).

Here, as in *Mascio*, the ALJ determined that Plaintiff has a "moderate" CPP limitation. Tr.

---

[4] The functional area of "concentration, persistence, or pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* As this Court has acknowledged, "[t]he regulations, however, offer little guidance on the meaning of 'moderate' limitations." *McDonald*, 2017 WL 3037554, at *3.

*Laura G. v. Kijakazi*
Civil No. 22-1380-BAH
February 8, 2023
Page 5

24. The ALJ purported to account for this limitation by limiting Plaintiff's RFC to performing "simple, routine tasks." Tr. 25, 30 ("Accordingly, the undersigned finds the claimant is limited to simple, routine tasks due to moderate restrictions in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace . . . ."). As such, the only accommodation for Plaintiff's moderate CPP limitation—confining Plaintiff to "simple, routine tasks"—is the exact accommodation that was flatly rejected in *Mascio*. Thus, unless the ALJ adequately explained why Plaintiff's moderate CPP difficulties did not translate into a limitation in the RFC, *Mascio* suggests remand. *See Shinaberry*, 952 F.3d at 121.

Defendant contends that the ALJ's decision comports with *Shinaberry* because the ALJ sufficiently explained why no further RFC limitations were needed to address Plaintiff's moderate CPP limitation and because the record supports that conclusion. ECF 14-1, at 6–7, 13–14. Citing *Mascio*, the ALJ here found that limiting Plaintiff to "performing simple routine tasks" sufficiently accounted for Plaintiff's CPP limitation because of Plaintiff's "activities of daily living, including driving, grocery shopping, and caring for children," and because of "evidence discussed elsewhere in this decision." Tr. 31. The ALJ went on to explain that "with regards to pace, the [ALJ] finds that the claimant does not have a significant deficit in this area for the reasons discussed above. Thus, the residual functional capacity finding above does not include a pace limitation." Tr. 31. Because the ALJ's conclusion and corresponding explanation regarding a pace-related limitation is not supported by substantial evidence, remand is appropriate here.

As an initial matter, Plaintiff argues that the ALJ failed to support the RFC determination with substantial evidence because "the ALJ failed to recognize that '[T]he ability to perform simple tasks differs from the ability to stay on task' such that 'Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.'" ECF 12-1, at 17 (emphasis deleted) (quoting *Mascio*, 780 F.3d at 638). In doing so, Plaintiff relies exclusively on pre-*Shinaberry* cases and fails to analyze this case under either *Shinaberry* or *Sizemore*, which this Court has read to hold that an RFC limitation to simple, routine tasks may be permissible under *Mascio* when the ALJ discussed how such a limitation corresponds with a claimant's moderate CPP limitation. *Everlena G. v. Kijakazi*, No. DLB-20-784, 2021 WL 3912277, at *2 (D. Md. Sept. 1, 2021).

Nevertheless, remand is warranted here because the ALJ failed to adequately explain how the limitation to simple, routine tasks accounted for Plaintiff's moderate CPP limitation. As noted, the ALJ explained in the RFC assessment that Plaintiff has no limitation in maintaining pace, so a pace-related RFC limitation was deemed unnecessary. Tr. 31. At step three, however, the ALJ made no such distinction between concentration, persistence, and pace. Tr. 24. Indeed, the ALJ's step-three conclusion was based, at least in part, on the fact that Plaintiff's "husband reported [Plaintiff] could pay attention for a long time but did not finish what she started." *Id.* It is unclear how someone who cannot finish tasks could maintain a specific pace of completing such tasks over a sustained period of time. This case also differs from *Shinaberry* in that the claimant there suffered a lifelong CPP limitation. 952 F.3d at 122. By contrast, Plaintiff's impairments, including her moderate CPP limitation stem from a motor vehicle accident that occurred on the alleged onset date. Tr. 26, 45.

*Laura G. v. Kijakazi*
Civil No. 22-1380-BAH
February 8, 2023
Page 6

The ALJ cited to numerous pieces of evidence demonstrating Plaintiff's CPP difficulties. *See, e.g.*, Tr. 27 ("Her family helps with household chores. She needs all day to straighten up the house because she has to take breaks due to her neck, shoulders, and knees. The claimant has problems with remembering things. She experiences confusion when driving . . . ." (citation omitted)), 29 ("The claimant's neurocognitive disorder and adjustment disorder also affect her ability to perform work-related activities."), 30 ("Some mild concentration problems were noted [in January 2021]" (citations omitted)). However, the ALJ's RFC explanation fails to elucidate how the step-three conclusion comports with a lack of pace-related RFC limitation. Despite the ALJ's claim that the pace conclusion is supported by "the reasons discussed above," Tr. 31, nowhere else in the opinion is pace discussed independent of concentration and persistence.[5] In discussing medical opinion evidence, the ALJ found the medical opinion of Dr. Knotts persuasive and relied on Dr. Knotts's conclusion that "Plaintiff seems able to understand and complete simple tasks" for the limitation to simple, routine tasks. Tr. 30. Yet the ALJ failed to reckon with the sentence that immediately followed in Dr. Knotts's summary: "Mood symptoms may interfere with [Plaintiff's] ability to initiate tasks or *sustain tasks over time*. Concentration problems may interfere with [Plaintiff's] ability to complete complex tasks." Tr. 618 (emphasis added). Accordingly, the undersigned is unable to conclude that the ALJ's RFC determination is supported by substantial evidence.

Further, the ALJ's reference to Plaintiff's activities of daily living is also inadequate to explain why no further limitation is needed beyond a limit to "simple, routine tasks." Tr. 25. "The 'missing explanation' contemplated in *Mascio* relates to how a moderately CPP-limited claimant could engage in a type of work eight hours per day, five days per week." *Everlena G. v. Kijakazi*, No. CV DLB-20-784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021) (citing *Mascio*, 780 F.3d at 637–38). While the ALJ does refer to Plaintiff's activities of daily living as reported by Plaintiff and Plaintiff's spouse, this brief discussion occurred in the step three analysis related to "adapting and managing oneself." Tr. 24–25. The short references to activities of daily living fail to explain "how much time she actually spent" performing these activities of daily living or to address "the complexity of th[ese] activit[ies]." *Everlena G.*, 2021 WL 3912277, at *3. "As in *Mascio*," the required explanation "is missing here when the ALJ discusses Plaintiff's activities of daily living."[6] *Id.*

---

[5] Though it is possible the ALJ was referring to Plaintiff's activities of daily living, the ALJ expressly concluded that Plaintiff's activities of daily living supported the conclusion that Plaintiff "is able to *perform* simple tasks." Tr. 31 (emphasis added). The ALJ makes no mention of Plaintiff's ability to *sustain* these activities of daily living while maintaining a specific pace.

[6] The ALJ supported the conclusion that Plaintiff could perform simple, routine tasks despite her moderate CPP limitation by relying on the medical opinions of Dr. Knotts and the State agency psychological consultant. Tr. 30, *see* Tr. 92–93, 618. Medical opinions may be enough to support an ALJ's conclusion that a claimant can perform simple, routine tasks despite a moderate CPP limitation. *See Angela E. v. Kijakazi*, No. DLB-20-1888, 2021 WL 4290285, at *4 (D. Md. Sept. 20, 2021) ("[I]n both *Shinaberry* and *Sizemore*, the Fourth Circuit found opinion evidence provided the necessary substantial support for the ALJs' conclusions [that the claimant could

After an ALJ has made a step three finding that a claimant suffers from moderate CPP difficulties, the ALJ must either include a corresponding limitation in the RFC or explain why no such limitation is necessary. *See Shinaberry*, 952 F.3d at 121. The ALJ did neither, so remand is required. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## V.     CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 12, is GRANTED, insofar as it seeks remand, and Defendant's motion for summary judgment, ECF 14, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

perform simple, routine tasks]." (citing *Shinaberry*, 952 F.3d at 121; *Sizemore*, 878 F.3d at 80–81)). Here, the issue is not whether Plaintiff can perform simple, routine tasks, but whether such a limitation is sufficient to accommodate Plaintiff's impairments. The ALJ's explanation insufficiently addresses this question.